IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

HELENA MICHELLE THORNE,          )
                                 )
        Plaintiff,               )
                                 )
                                 )
        v.                       )          CIVIL NO. 3:11-cv-720-HEH
                                 )
MICHAEL J. ASTRUE,               )
        Commissioner of Social Security,  )
                                 )
        Defendant.               )

## REPORT AND RECOMMENDATION

Helena Michelle Thorne ("Plaintiff") is 50 years old and has worked as a cashier, day care provider, school cafeteria worker and sales associate. In 2009, she worked part-time cleaning offices. Plaintiff alleges that she suffers from back pain, arthritis, chemical imbalance and leg problems. On September 13, 2007, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") with a disability onset date of June 24, 2007, under the Social Security Act (the "Act"). Plaintiff's claim was presented to an administrative law judge ("ALJ"), who denied Plaintiff's request for benefits. On September 2, 2011, the Appeals Council denied Plaintiff's request for review.

In his decision, the ALJ assigned great weight to a consultative physician's report that was written and admitted into evidence after the hearing. She also assessed the credibility of Plaintiff based on Plaintiff's medical records and activities of daily living ("ADLs"). (R. 20-22.) In doing so, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she was limited to occasional climbing, bending, balancing,

stooping, kneeling, crouching and crawling. (R. at 20.) Plaintiff now challenges the ALJ's denial of DIB benefits, asserting that the ALJ failed to include her limited ability to reach in her RFC, that she was not given the opportunity to cross-examine the post-hearing consultative examiner and that the Appeals Council should have remanded her claim to evaluate her new evidence. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 12-22.)

Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case,[2] the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Defendant's motion for summary judgment (ECF No. 19) be DENIED. Plaintiff's motion for summary judgment (ECF No. 17) be GRANTED in part, to the extent that the final decision of the Commissioner is VACATED and REMANDED for a supplemental hearing on the post-hearing consultative examiner's report.

---

[1] The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

[2] Plaintiff's Motion for Extension of Time to File Response/Reply (ECF 28) is GRANTED, as good cause has been shown and the motion is uncontested. Plaintiff's Motion to Strike Defendant's Reply (ECF 30) is DENIED, as good cause has been shown for Defendant's need for a sur-reply and the Court views footnote 1 in Defendant's Reply (ECF 29) as a request for leave to submit his reply. In her Reply, Plaintiff included new evidence in the form of affidavits to support her position that the Commissioner denied her due process. In light of this new evidence, a sur-reply is fair and just. *U.S. ex rel. Carter v. Halliburton Co.*, No. 1:11cv602, 2011 WL 6178878, at *12 (E.D. Va. Dec. 12, 2011) ("A court has the discretion to allow a sur-reply where a party brings forth new material or deploys new arguments in a reply brief.").

# I. BACKGROUND

Because Plaintiff appeals the entirety of the ALJ's decision, Plaintiff's physical and mental medical histories, the opinions of the non-treating and consultative state agency physicians, Plaintiff's testimony, the vocational expert's ("VE") testimony and the medical records that Plaintiff filed with the Appeals Council are summarized below.

## A.      Plaintiff's Education and Work History

Plaintiff completed the eighth grade. (R. at 36.) At the time that she testified before the ALJ, she stated that she worked 12 hours a week for a cleaning service since the beginning of the year. (R. at 37-38.) Plaintiff also attempted to work in a retail position for one month, but claimed that she stopped working because she had leg and back pain and because her attention and concentration were impaired. (R. at 385.) Plaintiff previously worked as a cashier, day care provider, school cafeteria worker and sales associate. (R. at 164, 385.)

## B.      Plaintiff's Physical Medical History

In June 2007, Plaintiff went to the emergency room and complained of worsening lower back pain, which she rated at a seven out of 10. (R. at 370.) She appeared in moderate distress from her pain. (R. at 368.) Plaintiff indicated that she had neck as well as knee pain. (R. at 368.) She had limited hip flexion due to pain, 3+ reflexes and was prescribed Percocet and Motrin. (R. at 368-69.)

One month later, Plaintiff returned to the emergency room and rated her knee pain at a 10 out of 10 and her lower back pain at a two out of 10. (R. at 365.) She indicated that the pain radiated down both legs when she stood and that her legs were numb as well as weak. (R. at 365.) In September 2007, Plaintiff visited the emergency room and stated that she had difficulty

walking and that her legs frequently gave out. (R. at 363.) Plaintiff was referred for adult psychiatry. (R. at 364.)

On March 30, 2008, Plaintiff visited the emergency room complaining of anxiety and the inability to walk with pain, which she rated at a six out of 10. (R. at 422.) While Plaintiff was tearful, she was in no apparent distress. (R. at 420.) Plaintiff's spine was tender to touch and her gait was limited by her pain; however, she exhibited 5/5 muscle strength and a full range of motion. (R. at 420.) She was ambulatory at discharge. (R. at 423.)

On April 10, 2008, Plaintiff visited a neurology clinic and complained of chronic pain in her neck and lower back that radiated down her legs with sensory loss. (R. at 415.) Plaintiff had no weakness with normal muscle bulk and tone as well as a normal gait. (R. at 415.) Because she had 3+ reflexes, Plaintiff was referred for an image of her spine. (R. at 415.)

In December 2008, Plaintiff visited the emergency room for chronic back pain. (R. at 490.) She had a full range of motion and her lower back was mildly tender. (R. at 491.) Plaintiff was ambulatory and appeared well. (R. at 491.)

On March 17, 2009, Plaintiff complained that she had chronic lower back pain as well as pain in her abdomen and neck at the emergency room. (R. at 475.) She also requested a refill of her medication. (R. at 475.) At discharge, Plaintiff lacked any acute distress and was prescribed Motrin and Tramadol. (R. at 481, 483.)

In April 2009, Plaintiff's MRI without contrast of her lumbar spine revealed no evidence of fracture or subluxation, no significant abnormalities, mild dehydration of the intervertebral disc at T10-11, L4-L5 and L5-S1 as well as minimal disc bulging at the L5-S1 level. (R. at 460.) Minimal degenerative changes were noted, but there were no significant changes from an April 2006 MRI. (R. at 460-61.)

On May 4, 2009, Plaintiff visited VCU and obtained a new patient exam. (*See* R. at 464-65.) Plaintiff's chief complaint was back and leg pain. (R. at 465.) She had a normal range of motion, normal strength, no tenderness and an antalgic gait with 5/5 or 4/5 muscle strength and 2+ or 3+ reflexes. (R. at 467-68.) Plaintiff had decreased sensation in her left hand and pain in her back after a straight leg raising test. (R. at 468.) A few weeks later, Plaintiff's cervical spine was determined to be within normal limits for her age. (R. at 470.) In November 2009, an x-ray of Plaintiff's cervical spine revealed minor spondylitic changes to the C6 vertebrae; her spine was otherwise normal with well-maintained intervertebral disc. (R. at 619.)

## C. Plaintiff's Mental Medical History

During Plaintiff's 2009 new patient exam at VCU, her psychiatric health was evaluated. (*See* R. at 468.) Plaintiff was cooperative with a flat affect and no hallucinations or suicidal or homicidal ideations. (R. at 468.) Plaintiff had a history of depression with suicidal ideations and was recommended to enroll as a new patient with the psychiatric department. (R. at 468.)

On July 27, 2009, Plaintiff was admitted to the hospital for depression and suicidal feelings after she had an argument with her boyfriend and started hallucinating and hearing her family's voices. (R. at 601-05.) Plaintiff was diagnosed with depression and assigned a Global Assessment of Functioning ("GAF")[3] of 40.[4] (R. at 606.) Plaintiff was discharged with

---

[3] The Global Assessment of Functioning ("GAF") is a 100-point scale that rates "psychological, social, and occupational functioning." *Diagnostic Statistical Manual of Mental Disorders*, Americ. Psych. Assoc., 32 (4th Ed. 2002) (hereinafter "*DSM-IV*").

[4] A GAF of 40 is defined as "[s]ome impairment in reality testing or communication (*e.g.,* speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* at 34.

Amitriptyline, Seroquel and a referral to the Daily Planet, a clinic, for further psychological care. (R. at 605-06.)

On August 20, 2009, Plaintiff visited the Daily Planet for a follow-up after her hospitalization. (R. at 611.) She appeared healthy, neat and anxious, and was cooperative as well as relaxed. (R. at 613.) Plaintiff's mood was euthymic and her affect was appropriate. (R. at 613.) She was diagnosed with moderate recurrent major depression and personality disorder. (R. at 613.) A month later, Plaintiff reported that she was doing well and tolerating her medications. (R. at 609.) She was healthy, neat, smiling, cooperative and relaxed. (R. at 609.) Plaintiff was scheduled for a follow-up in two months. (R. at 609.)

**D.    The Opinion of Naren Logendra, M.D., Consultative Physician**

On December 5, 2007, Plaintiff visited Naren Logendra, M.D., a consultative examiner. (R. at 374-83.) Plaintiff complained that she could not stand for more than 10 minutes or walk more than a city block. (R. at 374.) She reported that she was taking Seroquel, Percocet, Flexeril, Elavil, Mobic, Ibuprofen, Nisoldipine and Famotidine. (R. at 374.) Plaintiff had an antalgic gait with no assistive devices and she had normal power and tone in her arms and legs. (R. at 375-76, 378-79.) Dr. Logendra diagnosed Plaintiff with chronic neck and back pain, depression, anxiety, hypertension, high cholesterol and dizziness. (R. at 376.) The doctor also opined that Plaintiff could not reach, push or pull because of her back pain. (R. at 379.) Plaintiff had normal ranges of motion in all joints, except for her back and neck. (R. at 381-82.) An x-ray of Plaintiff's spine revealed no malalignment, disc space narrowing or degenerative changes. (R. at 373.)

### E. The Opinion of Gary H. Bible, Ph.D, Consultative Psychologist

On January 23, 2008, Plaintiff was referred to Gary H. Bible, Ph.D., for anxiety, depression and a consultation for her disability claim. (R. at 385.) Plaintiff reported that she typically read her Bible, watched religious programs on television, completed an hour of chores, took naps and prepared dinner daily. (R. at 386.) She also indicated that she enjoyed walking as well as going to the mall and church. (R. at 386.)

Dr. Bible described Plaintiff as cooperative without any appearance of pain. (R. at 386.) Her affect and mood were appropriate and normal and "[h]er overall clinical presentation did not appear particularly consistent with the allegations of anxiety and depression." (R. at 386-87.) Plaintiff did not appear particularly distressed. (R. at 387.) Dr. Bible assigned Plaintiff a GAF of 70.[5] (R. at 387.)

In Dr. Bible's opinion, Plaintiff "could function in any number of simple and minimally demanding work settings consistent with her medical problems." (R. at 387.) Plaintiff could understand and carry out instructions, manage social interactions and cope with work-related stresses. (R. at 387.) Furthermore, Dr. Bible opined that Plaintiff might have a limited ability to sustain focused attention on tasks, but she could nonetheless work 40 hours a week in a competitive work environment. (R. at 387.)

### F. The Opinion of Steven White, M.D., Consultative Physician

On November 21, 2009, Steven White, M.D., consultatively examined Plaintiff. (R. at 621-25.) Dr. White summarized Plaintiff's 20-year history of back pain, five- to six-year history of arthritis and 20-year history of chemical imbalance. (R. at 621.) Plaintiff admitted that she

---

[5] A GAF of 70 is defined as "[s]ome mild symptoms (*e.g.,* depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (*e.g.,* occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV* at 34.

was on medication and had received counseling for her chemical imbalance, but did not think it significantly affected her ability to work. (R. at 621.) At the time of the visit, Plaintiff worked three days a week as a cleaner. (R. at 622.) She also reported that she could only sit for 50 minutes, stand for 30 minutes, walk less than a block and occasionally lift five pounds. (R. at 622.)

Dr. White observed that Plaintiff was in no acute distress, but that her mood was not appropriate, because she was crying inconsolably. (R. at 623.) Plaintiff had a symmetric, steady gait, 5/5 muscle strength, 2+ reflexes and a normal range of motion. (R. at 624.) She could rise from a sitting position without assistance, but could not squat and rise. (R. at 624.) Dr. White noted that Plaintiff did not give her best effort at the examination and that Plaintiff was experiencing back pain and "in no mood" to be examined. (R. at 625.)

Dr. White opined that Plaintiff could sit and stand normally during an eight-hour workday with normal breaks, walk for one hour in an eight-hour workday, walk without an assistive device, carry 10 pounds frequently and carry 20 pounds occasionally. (R. at 625.) He indicated that Plaintiff was limited to occasional bending, stooping and crouching with no manipulative limitations. (R. at 625.) Dr. White noted that Plaintiff did not have any "manipulative limitations on reaching, handling, feeling, grasping[ or] fingering" and could perform those functions frequently. (R. at 625.)

## G.    The Opinions of the Non-treating State Agency Doctors

On January 31, 2008, John Cooper, Ph.D, a non-treating state agency psychologist, completed a Psychiatric Review Technique. (R. at 388-401.) Dr. Cooper diagnosed Plaintiff with non-severe depression and anxiety, with mild limitations on Plaintiff's ADLs and difficulties in maintaining social functioning, but noted that Plaintiff had no episodes of

decompensation. (R. at 388-98.) Continuing, Dr. Cooper determined that the evidence in the record did not establish the presence of the "C" criteria.[6] (R. at 399.)

William Render, M.D., a non-treating state agency physician, diagnosed Plaintiff with chronic neck and back pain, while completing a Physical RFC Assessment on February 1, 2008. (R. at 402-09.) Dr. Render opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, sit for about six hours in an eight-hour workday and occasionally push and pull with limited reaching in all directions. (R. at 403, 405.) Dr. Render did not mark the total amount of hours that Plaintiff could stand or walk in an eight-hour workday. (R. at 403.)

On September 10, 2008, non-treating state agency physician Alicia Cain, M.D., diagnosed Plaintiff with chronic back and neck pain, while completing a Physician RFC Assessment. (R. at 424-31.) Dr. Cain marked that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday and had limited reaching in all directions. (R. at 425, 427.)

---

[6] The Paragraph "C" criteria for Listing 12.04, Affective Disorders, is:

C.   Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
1.   Repeated episodes of decompensation, each of extended duration; or
2.   A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
3.   Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04.

A week later, Arleen Turzo, Ph.D., a non-treating state agency psychologist, completed a

Psychiatric Review Technique and diagnosed Plaintiff with pain disorder associated with

psychological factors. (R. at 432-38.) Dr. Turzo opined that Plaintiff was mildly limited in

performing ADLs and maintaining concentration, persistence or pace, but had no episodes of

decompensation. (R. at 442.) Continuing, she determined that the evidence in the record did not

establish the presence of the "C" criteria. (R. at 443.) Dr. Turzo summarized that Plaintiff was

adequately performing ADLs, not significantly depressed, adequately concentrated, adequately

functioned socially and had a GAF of 70, which was in the mild range. (R. at 444.)

**H.    The Testimony of the Vocational Expert**

On September 29, 2009, Andrew B. Beal, a vocational expert ("VE"), testified before the

ALJ. (R. at 55.) The VE was asked to assume:

> A person the claimant's age, education and work experience. For the first
> hypothetical assume somebody who is limited to light work, so lifting and
> carrying 20 pounds occasionally and 10 pounds frequently, standing and walking
> for six hours out of an eight-hour day and sitting for six hours out of an eight-hour
> day with the additional limitations of only occasionally climbing, bending,
> balancing, stooping, kneeling, crouching or crawling.

(R. at 56.) The ALJ then asked the VE whether Plaintiff could return to her past relevant work.

(R. at 56.) The VE responded that she could perform cashiering, cleaning and sales work, as she

had in the past. (R. at 56-57.) The ALJ then asked: "If someone were limited to no more than

frequent fingering, handling and reaching, so frequent but not constant[,] would that impact [the]

light jobs?" (R. at 58.) The VE determined that job performance would not be impacted

significantly. (R. at 58.)

Plaintiff's counsel asked the VE if a limitation to "no more than occasionally fingering,

handling and reaching would change" the VE's testimony that Plaintiff could perform the work

as a sorter, assembler or hand packer. (R. at 60.) The VE stated that the job required a person to

use their hands "at least frequently." (R. at 60.) Plaintiff's counsel then asked the VE whether "any less than frequently, an occasional limitation[,] to even handling would preclude" sedentary or light jobs. (R. at 60.) The VE responded, "Yes." (R. at 60.)

## I.    Plaintiff's Statements

On October 29, 2007, Plaintiff completed a Function Report in which she admitted to watching television, cooking dinner, washing dishes and talking on the phone. (R. at 190-97.) Plaintiff indicated that she could only sleep three to four hours a night. (R. at 191.) She left the house once a day, would walk or drive and attempted to attend church every week. (R. at 193-94.) Plaintiff shopped for groceries once a week. (R. at 193.)

Plaintiff marked that her illnesses limited her ability to lift, walk, climb stairs, understand, squat, sit, see, follow instructions, bend, kneel, remember, use her hands, stand, reach, hear, complete tasks and concentrate. (R. at 195.) She indicated that she could walk 20 feet before she needed to stop and rest for 20 minutes. (R. at 195.) Plaintiff noted that she could get along well with authority figures, but was afraid of being around crowds. (R. at 196.)

On November 7, 2007, Plaintiff's son, Edward L. Rollins, Jr., with whom Plaintiff occasionally lived, completed a Function Report for Plaintiff. (R. at 218.) Mr. Rollins indicated that Plaintiff attempted to take walks, cleaned, would occasionally babysit and attend doctors' appointments. (R. at 218.) She cared for no one other than herself. (R. at 219.) Mr. Rollins noted that Plaintiff had problems sleeping, but cooked dinner for him four days a week, cleaned and laundered clothes. (R. at 219-20.) Plaintiff could drive, walk less than a quarter of a mile, attend church and shop in stores when she needed something. (R. at 221-23.) Mr. Rollins noted that Plaintiff was in pain when she picked up her grandchild. (R. at 222.) He marked that

Plaintiff was limited in her ability to lift, walk, climb stairs, squat, sit, bend, kneel, stand, complete tasks, use her hands and reach. (R. at 223.)

On August 3, 2008, Mr. Rollins completed another Function Report for Plaintiff in which he marked that she did not take care of other people or pets, did not cook, rarely laundered her clothes, shopped when necessary, drove and left the house every once in a while. (R. at 242-45.) Plaintiff was limited in her ability to lift, walk, climb stairs, understand, squat, sit, see, bend, kneel, remember, stand, complete tasks, reach, hear and concentrate. (R. at 247.) Mr. Rollins wrote that Plaintiff was in a lot of pain and could not stand without collapsing. (R. at 247.) A Function Report completed by Plaintiff on August 5, 2008, corroborated Mr. Rollins' 2008 report. (R. at 251-58.)

On September 29, 2009, Plaintiff testified before an ALJ. (R. at 29-64.) At that time, she lived with her daughter and granddaughter. (R. at 36.) Plaintiff watched television and attended church twice a week for an hour and a half. (R. at 41.) She testified that she drove herself to church, cooked, performed housework and babysat her granddaughter a couple hours a day. (R. at 43.)

Plaintiff testified that she had pain in her lower back as well as down her legs and had a migraine every day. (R. at 39.) Sometimes her pain was so great that she could not work. (R. at 39-40.) She stated that one of the side effects that she experienced from taking Seroquel was hallucinations. (R. at 40.) Plaintiff estimated that she could stand or walk for about 20 minutes at a time. (R. at 46-47.) She indicated that she took six to seven breaks during her two-to-four hour workday. (R. at 48.)

**J.     Medical Evidence Submitted to the Appeals Council**

Plaintiff submitted hundreds of additional medical records to the Appeals Council. (R. at 627-834.) However, much of the new evidence was either duplicative or dated after the date of the ALJ's decision. (*See* R. at 627-834.) For example, Plaintiff included more detailed patient notes from her July 2009 hospitalization, which included an assigned GAF of 30. (*See* R. at 635-98, 736-98.)

On October 5, 2009, Plaintiff was evaluated during out-patient physical therapy and rated her pain at a five out of 10 and her physical abilities at 52%. (R. at 709-12, 810-13.) Questionnaires completed by Plaintiff that were dated December 3, and November 5, 2009, rated her physical abilities at 42% and 44%. (R. at 703-08, 804-09.) A Discharge Summary for out-patient physical therapy from January 7, 2010, rated Plaintiff's pain at a three out of 10, indicated that Plaintiff could walk for 30 minutes at a time, and opined that Plaintiff was severely disabled based on the results of a questionnaire completed by Plaintiff. (R. at 699-701, 800-02.)

Plaintiff also submitted a Certificate of Health from Adam Kaiser, M.D., dated May 6, 2011. (R. at 629.) Dr. Kaiser, who first examined Plaintiff on the date that he completed the certificate, diagnosed Plaintiff with major depressive episode with psychotic features and low back pain. He opined that Plaintiff could not work from January 2011 through the date of the certificate. (R. at 629.) Included with Dr. Kaiser's opinion was a list of Plaintiff's diagnoses and medications. (R. at 630-33.)

## II. PROCEDURAL HISTORY

Plaintiff filed for SSI and DIB on September 13, 2007, claiming disability due to back pain, arthritis, chemical imbalance and leg problems with an alleged onset date of June 24, 2007. (R. at139-46, 159, 163.) The Social Security Administration ("SSA") denied Plaintiff's claims

initially and on reconsideration.[7] (R. at 69-72, 82-89.) On September 29, 2009, Plaintiff

testified before an ALJ. (R. at 29-64.) On December 31, 2009, the ALJ issued a decision

finding that Plaintiff was not disabled. (R. at 16-24.) The Appeals Council subsequently denied

Plaintiff's request to review the ALJ's decision on September 2, 2011, making the ALJ's

decision the final decision of the Commissioner subject to judicial review by this Court. (*See* R.

at 1-3.)

### III. QUESTIONS PRESENTED

Was the Commissioner's assessment of Plaintiff's RFC supported by substantial evidence

in the record and the application of the correct legal standard?

Was Plaintiff adequately afforded an ability to object to post-hearing evidence admitted

in the record?

### IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to

determining whether the Commissioner's decision was supported by substantial evidence on the

record and whether the proper legal standards were applied in evaluating the evidence. *Hancock

v. Astrue*, 667 F.3d 470, 472 (4th Cir. Jan. 5, 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650,

653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance,

and is the kind of relevant evidence a reasonable mind could accept as adequate to support a

conclusion. *Id.* (citations omitted); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

[7] Initial and reconsideration reviews in Virginia are performed by an agency of the state
government — the Disability Determination Services ("DDS"), a division of the Virginia
Department of Rehabilitative Services — under arrangement with the SSA. 20 C.F.R. pt. 404,
subpt. Q; *see also* § 404.1503. Hearings before administrative law judges and subsequent
proceedings are conducted by personnel of the federal SSA.

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (citation omitted) (internal quotation marks omitted); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) (internal quotation marks omitted)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Hancock*, 667 F.3d at 476 (citation omitted). While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record. *See Mastro*, 270 F.3d at 176-77.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[8] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[9] based on an assessment of the claimant's residual functional capacity ("RFC")[10] and the "physical and mental demands of

---

[8] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[9] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[10] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from performing her past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n.5). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity that the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

# V. ANALYSIS

## A.    The ALJ's opinion.

The ALJ began her decision by noting that she held the record open for Plaintiff to undergo a consultative examination. (R. at 16.) The ALJ represented that on December 10, 2009, she proffered Plaintiff's counsel with a copy of Dr. White's report and offered Plaintiff an opportunity to review and comment on the report. (R. at 16.) Further, the ALJ documented that, "[a]s of the date of this decision, [Plaintiff] has not responded." (R. at 16.) The ALJ then turned to the merits of Plaintiff's claim.

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since June 24, 2007, the alleged onset date, and was insured through March 31, 2009. (R. at 18.) At step two, the ALJ determined that Plaintiff was severely impaired from degenerative disc disease and hypertension. (R. at 19.) In finding that Plaintiff was not severely impacted from a mental illness, the ALJ evaluated Plaintiff under the Listings. (R. at 19.) At step three, the ALJ concluded that Plaintiff's maladies did not meet one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 20.)

The ALJ then determined that Plaintiff had the RFC to perform light work, except that she was limited to occasional climbing, bending, balancing, stooping, kneeling, crouching and crawling. (R. at 20.) The ALJ discussed Plaintiff's statements, which included complaints of migraine headaches, neck pain and lower back pain that radiated down her legs. (R. at 20.) Plaintiff indicated that she could not stand, stoop, bend or squat for long periods of time and had trouble sitting or lifting over five pounds. (R. at 20.) She testified that she could take care of her personal needs, perform household chores, prepare simple meals, watch television, drive and attend church twice a week. (R. at 20.)

The ALJ then summarized Plaintiff's medical records, which included treatment for low back pain and hypertension. (R. at 21.) An MRI of Plaintiff's lumbar spine revealed minimal degenerative changes. (R. at 21.) Regardless of her normal range of motion and strength, Plaintiff continued to be treated in the emergency room for chronic back pain. (R. at 21.) Plaintiff was seen by a consultative physician who determined that Plaintiff could lift, carry and handle light objects and that her range of motion was normal. (R. at 21.) The consultative physician further opined that Plaintiff could sit and stand normally during an eight-hour work day, could carry 10 pounds frequently or 20 pounds occasionally and was limited to intermittent bending, stooping and crouching. (R. at 21.) Additionally, Plaintiff visited a consultative psychologist, who determined that her mood and affect were within normal limits. (R. at 21.) He further opined that Plaintiff could function in simple or minimally demanding work settings and could understand and carry out instructions, manage social interactions and cope with work-related stress. (R. at 21-22.) Plaintiff was only seen twice for psychiatric treatment and was hospitalized with a diagnosis of depression. (R. at 22.)

The ALJ found that Plaintiff suffered from degenerative disc disease and hypertension. (R. at 22.) The ALJ characterized Plaintiff's treatment as conservative in nature, as she had no hospitalizations for her severe medical issues. (R. at 22.) Because she was able to perform many ADLs and worked part-time cleaning offices, the ALJ assessed that Plaintiff had diminished credibility. (R. at 22.)

The ALJ then assigned little weight to the opinions of the non-treating state agency physicians, who determined that Plaintiff had the RFC for medium work with a limitation on reaching. (R. at 22.) The ALJ gave great weight to Dr. White, the consultative examiner who opined that Plaintiff could sit and stand normally in an eight-hour work day with normal breaks

and occasional bending, stooping and crouching, because his opinion was supported by the objective medical evidence. (R. at 22.)

At step four, the ALJ assessed that Plaintiff had no past relevant work. (R. at 22.) Next, considering Plaintiff's age, limited education, ability to communicate in English, work experience and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R. at 22-23.) The ALJ therefore found that Plaintiff had not been under a disability under the Act from June 24, 2007. (R. at 23.)

Plaintiff asserts that substantial evidence did not support the ALJ's RFC assessment. (Pl.'s Mem. at 18-20.) Next, Plaintiff complains that her due process rights were violated, because the Commissioner failed to provide her with time to object to the post-hearing evidence from Dr. White. (Pl.'s Mem. at 12-18.) Plaintiff also contends that the Appeals Council erred by failing to remand her case to the ALJ based on her "new" evidence. (Pl.'s Mem. at 20-22.) In contrast, the Commissioner asserts that substantial evidence supported the ALJ's decision and that Plaintiff's due process rights were not violated. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") at 14-24.)

**B. Based on the current record, substantial evidence supported the ALJ's determination that Plaintiff was not disabled under the Act.**

While Plaintiff properly indicates that the ALJ carries the burden of proof when determining whether work existed in the national economy that Plaintiff could perform, Plaintiff seems to also suggest that the ALJ carries that same burden when determining Plaintiff's RFC. (*See* Pl.'s Br. at 18.) Plaintiff carries the burden of proof throughout steps one through four of the process; only at step five does the burden shift to the ALJ. *Yuckert*, 482 U.S. at 146 n.5; *Hancock*, 667 F.3d at 472 (citation omitted). Therefore, the burden of proof rested on Plaintiff

when the ALJ assessed her RFC, but shifted to the ALJ when the ALJ assessed whether there were jobs in the national economy that Plaintiff could perform.

### 1. The ALJ did not err when she did not include reaching as a limitation to Plaintiff's RFC.

Plaintiff first contends that the ALJ erred when she did not include limitations of reaching to Plaintiff's RFC. (Pl.'s Br. at 19; Pl.'s Rep. to Def.'s Resp. to Pl.'s Mot. for Summ. J. (ECF 25) ("Pl.'s Rep.") at 6-7.) The ALJ considered Plaintiff's reaching abilities. At the hearing, the ALJ asked the VE whether a person that was "limited to no more than frequent fingering, handling and reaching, so frequent but not constant" would be able to perform light work. (R. at 58.) Additionally, Plaintiff's counsel asked the VE if a limitation to "no more than occasionally fingering, handling and reaching would change" the VE's testimony that Plaintiff could perform the work as a sorter, assembler or hand packer. (R. at 60.) With regard to the testimony, the ALJ assessed that Plaintiff had the RFC to perform light work, except that she was limited to occasional climbing, bending, balancing, stooping, kneeling, crouching and crawling. (R. at 20.)

The ALJ's RFC assessment was based on the opinion of Dr. White, who opined that Plaintiff could sit and stand normally during an eight-hour workday with normal breaks, walk for one hour in an eight-hour workday, walk without an assistive device, carry 10 pounds frequently and carry 20 pounds occasionally. (R. at 625.) He also indicated that Plaintiff was limited to occasional bending, stooping and crouching with no manipulative limitations. (R. at 625.) The ALJ gave Dr. White's opinion great weight, as it was consistent with the medical records. (R. at 22.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

21

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006).

Two non-treating state agency physicians and Dr. Logendra opined that Plaintiff was limited in reaching in all directions. (R. at 379, 405, 427.) The ALJ gave these opinions limited weight. (R. at 22.) Dr. White's opinion, which did not include a reaching limitation, was assigned great weight by the ALJ, because substantial evidence supported it. (R. at 22.) Unlike the two other state agency physicians, Plaintiff visited and was observed by Dr. White, who noted that Plaintiff did not have any "manipulative limitations on reaching, handling, feeling,

grasping[ or] fingering" and could perform those functions frequently. (R. at 625.) This was supported by the countless emergency room records, which documented Plaintiff's subjective back and leg pain complaints, while noting Plaintiff's full range of motion. (R. at 363, 365, 370, 415, 420, 422, 467-68, 475, 490-91.) Additionally, Dr. White's opinion was supported by medical evidence obtained by Dr. Logendra — an x-ray of Plaintiff's spine revealed no malalignment, disc space narrowing or degenerative changes. (R. at 373.) Therefore, the ALJ properly weighed the physician opinions and did not err when she did not include reaching as one of Plaintiff's limitations.

### 2. The ALJ addressed Plaintiff's mental health when determining her RFC.

Plaintiff complains that the ALJ "failed to address any mental function analysis as part of the RFC determination." (Pl.'s Br. at 19.) Without support, Plaintiff asserts that the ALJ was "required" to assess Plaintiff's mental functional capacity. (Pl.'s Br. at 19.) However, the ALJ did address Plaintiff's mental health history during the discussion for Plaintiff's RFC, despite determining that Plaintiff's mental health did not suffer severely. (*See* R. at 19-22.)

Dr. White documented that Plaintiff admitted that she was on medication, had received counseling for her chemical imbalance and did not think it significantly affected her ability to work. (R. at 621.) The ALJ also summarized Plaintiff's consultative visit with a psychologist, during which the psychologist opined that Plaintiff could function in simple or minimally demanding work settings and could understand and carry out instructions, manage social interactions and cope with work-related stress. (R. at 21-22.) The ALJ noted that Plaintiff was only seen twice for psychiatric treatment and was hospitalized with a diagnosis of depression. (R. at 22.) Therefore, the ALJ adequately addressed Plaintiff's mental health records.

### 3.    The ALJ properly assessed Plaintiff's diminished credibility.

Plaintiff argues that once she objectively showed that she was afflicted with a condition which would cause her pain, the subjective evidence of her pain was sufficient to prove her credible. (Pl.'s Br. at 19-20.)  She also suggests that the ALJ should have assessed Plaintiff's pain and use of narcotic medication with respect to her mental health. (Pl.'s Br. at 19.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.

It is well established that Plaintiff's subjective allegations of pain are not — alone — conclusive evidence that Plaintiff is disabled. *See Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994).  Rather, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3.  The ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on all of the relevant evidence in the case record").  If the underlying impairment reasonably could be expected to produce the individual's

pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all [of] the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

While the ALJ determined that Plaintiff suffered from degenerative disc disease and hypertension, she also characterized Plaintiff's treatment as conservative in nature, as Plaintiff had no hospitalizations for her severe medical issues. (R. at 22.) Because Plaintiff was able to perform many ADLs and worked part-time cleaning offices, the ALJ assessed that Plaintiff had diminished credibility. (R. at 22.) This assessment was supported by substantial evidence in the record as it stood.

While Plaintiff continuously complained of back and neck pain, her objective medical records documented Plaintiff's full range of motion. (R. at 363, 365, 370, 415, 420, 422, 467-68, 475, 490-91.) In April 2009, Plaintiff's MRI without contrast of her lumbar spine revealed no evidence of fracture or subluxation, no significant abnormalities, mild dehydration of the intervertebral disc at T10-11, L4-L5, and L5-S1 as well as minimal disc bulging at the L5-S1 level. (R. at 460.) Minimal degenerative changes were noted, but there were no significant changes from an April 2006 MRI. (R. at 460-61.) A month later, Plaintiff's cervical spine was determined to be within normal limits for her age. (R. at 470.) In November 2009, an x-ray of Plaintiff's cervical spine revealed minor spondylitic changes to the C6 vertebrae; her spine was otherwise normal and well-maintained intervertebral disc. (R. at 619.)

Concisely put, Plaintiff's objective medical evidence did not support the subjective documentation of her pain. Plaintiff's testimony at the hearing likewise did not support her allegations of pain. Plaintiff testified that she watched television, drove and attended church twice a week for an hour and a half, performed housework and babysat her granddaughter for a couple hours a day. (R. at 41-43.) Additionally, Plaintiff admitted to being able to stand or walk for about 20 minutes at a time and working part-time cleaning offices. (R. at 46-48.)

This Court must give great deference to the ALJ's credibility determinations. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)). The ALJ did not err in determining that Plaintiff was not disabled under the Act, because substantial evidence existed in the record as it stood.

**B.      Remand is appropriate under 20 C.F.R. § 416.1416(f).**

As discussed above, the ALJ's decision was largely based on the consultative report of Dr. White. Plaintiff asserts that her due process rights were violated when she received a proffer letter that included Dr. White's consultative report after the date of the ALJ's decision. (Pl.'s Br. at 12.) Citing *Demenech v. Secretary of the Dep't of HHS*, 913 F.2d 882, 884-85 (11th Cir. 1990), Plaintiff argues that receiving the proffer notice five days after the date of the ALJ's

decision denied her the ability to subpoena and cross-examine Dr. White, which, she claims, violated her due process rights. (Pl.'s Br. at 12-13.)

After Plaintiff's consultative examination with Dr. White, the ALJ wrote Plaintiff's counsel a letter dated December 10, 2009. (R. at 277-78; Pl.'s Rep. Br., Att. 2, Aff. of Diane Cadalzo ¶ 7, Exh. F (ECF 27-2)) Plaintiff contends that she did not receive the letter until January 4, 2010, and attaches a copy of the letter sent to her counsel with a stamp indicating that the letter was received on January 4, 2010. (Pl.'s Br. at 12; Aff. of Cadalzo ¶ 7, Exh. F.) Continuing, Plaintiff alleges that the letter was not postmarked until December 30, 2010, but does not include a copy of the envelope. (Pl.'s Br. at 12; Pl.'s Rep. Br., Att. 4, Decl. of Pamela I. Adkins ⁗ 13 (ECF 27-4).) Plaintiff further alleges that the Commissioner only mailed a copy of the letter to her counsel, not to her, and that the Commissioner did not properly address the letter sent to her counsel. (Pl.'s Rep. Br. at 3-4.)

The underlying issue here is the date that the ALJ's letter was postmarked. Plaintiff, through a declaration from her counsel, insists that the letter was postmarked on December 30, 2010. However, Plaintiff does not provide a copy of the envelope and supplies this Court only with the declaration from her counsel. In his Reply Brief, the Commissioner summarizes the declarations attached to Plaintiff's Reply Brief, but fails to contest the existence or admissibility of those facts. (*See* Def.'s Rep. at 2 n.3.) As such, the Court finds that Plaintiff's facts are uncontested and that there is no genuine dispute as to these material facts. *See* Rule 56(a). Consequently, the Court finds that Plaintiff was denied the opportunity to challenge Dr. White's finding, which formed the basis for the support the ALJ's decision.

Plaintiff bases her due process argument on the Hearings, Appeals and Litigation Law Manual ("HALLEX") from SSA's Office of Disability Adjudication and Review ("ODAR"),

(Pl.'s Br. at 16), which requires an ALJ to give notice to a claimant when she receives additional evidence for the record and give her an opportunity to object to the admission of evidence or cross-examine the author of the evidence. *Posthearing Actions — General*, HALLEX I-2-7-1, *available at* http://www.ssa.gov/OP_Home/hallex/I-02/I-2-7-1.html (last viewed Sept. 12, 2012). As an agency manual and not regulations, the HALLEX does not carry the force of law. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("But the Claims Manual is not a regulation. It has no legal force, and it does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees."); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) ("HALLEX does not carry the authority of law"); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chevron*-style deference.").

Plaintiff cites to *Newton* and requests that this Court adopt *Newton*'s holding that "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'" *Id.* (Quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). But not all of the circuit courts of appeal have reached the same conclusion as *Newton. See Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir. 2000) (reiterating that the HALLEX is merely the Commissioner's interpretation of rules, laws and procedures for the SSA and therefore does not contain the force and effect of law and is not binding, refused to review allegations of noncompliance with the HALLEX).

The Fourth Circuit has yet to rule on this issue. *See Calhoun v. Astrue*, No. 7:08cv619, 2010 WL 297823, at *3 (W.D. Va., Jan. 15, 2010) ("The Fourth Circuit has not addressed the meaning and effect of HALLEX[.]"). Of the district courts in this circuit that have addressed the

issue, one court adopted the Ninth's Circuit holding, *Melvin v. Astrue*, 602 F. Supp. 2d 694, 704

(E.D.N.C. 2009) (refusing to analyze the plaintiff's claim under HALLEX), while another

adopted the Fifth Circuit's holding, *Way v. Astrue*, 789 F. Supp. 2d 652, 655 (D.S.C. 2011)

("However, as in *Newton*, the court should consider whether the Commissioner's failure to

follow HALLEX prejudiced a claimant who has raised the issue.").

Regardless of the circuit split, this Court need not decide whether it should enforce

HALLEX. SSA Regulations require an opportunity for claimants to review post-hearing

evidence that is unfavorable:

> If, for any reason, additional evidence is obtained or developed by us after your
> disability hearing, and all evidence taken together can be used to support a
> reconsidered determination that is unfavorable to you with regard to the medical
> factors of eligibility, we will notify you, in writing, and give you an opportunity
> to review and comment on the additional evidence. You will be given 10 days
> from the date you receive our notice to submit your comments (in writing or, in
> appropriate cases, by telephone), unless there is good cause for granting you
> additional time, as illustrated by the examples in § 416.1411(b). Your comments
> will be considered before a reconsidered determination is issued. If you believe
> that it is necessary to have further opportunity for a hearing with respect to the
> additional evidence, a supplementary hearing may be scheduled at your request.
> Otherwise, we will ask for your written comments on the additional evidence, or,
> in appropriate cases, for your telephone comments.

20 C.F.R. § 416.1416(f). The Commissioner failed to contest Plaintiff's assertion that the ALJ's

proffer letter was postmarked on December 30, 2009, which was one day before entry of the

ALJ's decision. Thus, the Commissioner did not give Plaintiff any time to review and object to

Dr. White's report. As such, the Court finds — solely on the basis of the uncontested facts in

this particular case — that the Commissioner did not comply with 20 C.F.R. § 416.1416(f).

Because the ALJ's decision was largely based on Dr. White's report and because the ability for

Plaintiff to object to that report is required by the Commissioner's Regulations, the Court

recommends a limited remand for the sole purpose that Plaintiff may challenge Dr. White's

consultative report and whether any attacks upon Dr. White's report impacts the ALJ's denial of benefits to Plaintiff.[11]

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Defendant's motion for summary judgment (ECF No. 19) be DENIED. Plaintiff's motion for summary judgment (ECF No. 17) be GRANTED in part, to the extent that the final decision of the Commissioner is VACATED and REMANDED for a supplemental hearing on the post-hearing consultative examiner's report.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a _de novo_ review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ _____

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Dated: September 20, 2012

---

[11] Because this Court recommends a limited hearing for Plaintiff to object to Dr. White's report, it does not reach the issue of whether a remand is appropriate based on the "new" evidence presented at the Appeals Council. Of course, Plaintiff is entitled to request that the ALJ consider such evidence when evaluating Dr. White's report on remand.

30